**Ex parte Clarence Wayne LINDSEY.**

**No. 19508.**

Court of Civil Appeals of Texas, Dallas.

Jan. 12, 1978.

Paul Banner, Greenville, for appellant.

Robert L. Scott, Greenville, for appellee.

ROBERTSON, Justice.

In this habeas corpus proceeding under Article 1824a of the Texas Revised Civil Statutes, Clarence Wayne Lindsey, relator, seeks discharge from the custody of the sheriff of Hunt County. He was detained pursuant to a commitment order issued by the Judge of the 196th Judicial District Court, who found relator in contempt for failing to pay child support. We admitted relator to bail, and because he had no counsel at the original hearing, suggested that he seek rehearing of the matter with assistance of counsel. After rehearing, the trial court refused to modify its order. We now deny relator's application for habeas corpus, and remand him to the custody of the sheriff.

This case presents two basic issues. We must first decide whether relator has conclusively shown his inability to purge the contempt by paying the delinquent support. If we conclude that he has not, we must then decide whether the nature of the proceedings at the original contempt hearing deprived relator of his constitutional right to due process of law.

### Inability to Pay

Relator asserts that the record of the two hearings in this case demonstrates his inability to pay the delinquent support. We recognize that where a person cannot perform the act necessary to purge the contempt, indefinite imprisonment cannot be imposed for nonperformance; *Ex parte*

*Ramzy*, 424 S.W.2d 220 (Tex.1968); *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184 (1953), however, before habeas corpus relief will issue, the relator must *conclusively* establish that he has no source from which he might be expected to obtain the arrearage. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967); *Ex parte Hennig*, 559 S.W.2d 401 (Tex.Civ.App.—Dallas 1977); *Ex parte Hart*, 524 S.W.2d 365, 366 (Tex.Civ.App.—Dallas 1975, no writ). In *Ex parte Hennig, supra*, we held that the relator must show not only that he lacks the financial resources to pay the delinquency, but also that he knows of no source from which the sum might be obtained. This ultimate fact can be established by proof of the following:

(1) that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2) that the relator has unsuccessfully attempted to borrow the sum from financial institutions such as banks, credit unions, and loan companies; and

(3) that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

*Ex parte Hennig, supra; see Ex parte Rohleder, supra*, 424 S.W.2d at 892; *Ex parte Hart, supra*, 524 S.W.2d at 366. Each of these elements must be supported with specific proof.

■ In the present case, we conclude that relator has not met his burden to conclusively show his inability to pay. Relator has accumulated new assets since the support order was entered, including substantial real property and a 1977 Dodge van. He holds the title to these properties in his own name. Although he asserts that if these assets were sold, he would be obligated to repay his present wife certain amounts of money, no evidence of a legally binding agreement to that effect was introduced at either hearing. No mortgages or liens on the properties are held in his present wife's name. He owns interests in

some horses, but has made no effort to sell them or any other items of his personalty to pay the delinquent sum. Relator is employed and earns approximately $150 per week; however, he testified that all of this money was spent for his present wife, his present wife's children, and his clothing. He further testified that his paycheck is often spent for leisure purposes, and admitted that he and his wife recently took a trip to a horse sale in Oklahoma where he spent an entire week's wages.

Further, there is no evidence that relator has attempted to borrow funds. He testified that he had made no attempt to borrow or otherwise secure any money from banks, financial institutions, or his employer in the last twelve months. Although relator explained that he believed no relative would assist in raising the needed funds, he further stated that he had not asked for help from any relatives or friends in the past year. Under this showing, we must conclude that relator has not met his burden of proving his inability to pay the delinquent support.

*Due Process*

Relator next alleges that his detention is void for a lack of constitutional due process. This argument is based upon three theories; first, relator argues that he was not given the ten day notice required by section 14.09 of the Texas Family Code prior to the original contempt hearing; second, he argues that he was not afforded his constitutional right to counsel at the original hearing; finally, he contends that the clerk's testimony regarding the delinquent sum was unsworn, and that an order based upon such testimony is void.

■ Despite relator's arguments, we need not decide the questions of notice and right to counsel, for these alleged errors were cured when a second hearing was held before the trial court after we admitted relator to bail. We suggested a rehearing of relator's contempt commitment because relator's affidavit stated that he was unable to pay the arrearage, but it appeared that, due to notice problems and lack of counsel,

the facts concerning relator's ability to pay had not been fully developed. Although we recognize the general rule that precludes a trial court from issuing orders in conflict with our exercise of habeas corpus jurisdiction, *Ex parte Spencer*, 508 S.W.2d 698, 700 (Tex.Civ.App.—Texarkana 1974, no writ), this rule does not prohibit rehearing of the commitment matter in the trial court if the rehearing is designed to modify or vacate the order against which habeas corpus relief is sought. Habeas corpus is a collateral attack upon an existing order of commitment, *Ex parte Nix*, 149 Tex. 267, 231 S.W.2d 411 (1950), and as such is independent of the trial court's continuing jurisdiction over its order after rendition. While a direct attack on the order by motion in the trial court invokes the court's power to modify or vacate its judgment, *see Lipscomb v. Lofland*, 141 S.W.2d 983 (Tex.Civ. App.—Amarillo 1940, writ dism'd, judgment cor.), collateral attack by habeas corpus in this court invokes a very limited jurisdiction, namely, to decide whether the trial court's order is void. *Ex parte Ramzy*, 424 S.W.2d 220 (Tex.1968). The trial court cannot order relator back to jail while he is free on bail granted by this court; however, the trial court retains authority to exercise its general power to modify or vacate its orders in any manner that does not conflict with our limited habeas corpus jurisdiction. In other words, while invocation of our habeas corpus jurisdiction precludes trial court enforcement of its contempt order in any manner that would interfere with our granting the habeas corpus relief sought, it does not preclude direct attack on the order by motion in the trial court, and the court may modify or vacate its order pursuant to that direct attack despite the pendency of habeas corpus proceedings in this court.

 We suggested that such a direct attack be made in this case, and in accordance with our suggestion, the trial court heard further evidence. Since relator had sufficient notice and was represented by counsel at that hearing, we conclude that any irregularities of the original hearing were cured by the rehearing of the matter before the trial court. Of course, the granting of a rehearing in the trial court is discretionary with the trial judge; however, rehearings should be freely granted in circumstances where the absence of counsel may have precluded full development of the facts. Rehearing in the trial court with adequate representation is an eminently superior remedy to applying for habeas corpus relief with an insufficient record. Even if the trial court does not modify or vacate its order, relator then has a complete record for our review on application for writ of habeas corpus. Although the record indicates that there may have been some misunderstanding concerning the purpose of the second hearing, we consider the record at that hearing sufficient to show that the trial court had an opportunity to modify or vacate its former order.

 Relator's final argument is that even if any constitutional problems of lack of notice and absence of counsel were cured by the second hearing, the order is still void because the court's determination of the delinquent sum was based upon unsworn testimony. While it is true that the court clerk was not sworn when she testified regarding the delinquent amount, relator also testified regarding the amount of his weekly payments and the date of his last payment. Even assuming that the clerk's testimony was not competent evidence of the delinquency, the trial court could still have determined the amount from the data provided by relator's testimony.

Accordingly, the application for writ of habeas corpus is denied, and relator is remanded to the custody of the sheriff.