**Ex Parte Charles Edgar ENGLUTT.**

**No. 8914.**

Court of Civil Appeals of Texas, Texarkana.

June 23, 1981.

**280**

Frank D. Moore, Irving, for appellant.

Bill Terry, Bonham, for appellee.

CORNELIUS, Chief Justice.

Charles Edgar Englutt was adjudged by the District Court of Fannin County to be in contempt for failure to pay child support ordered by an amended decree in his divorce from Mrs. Martha Ann Englutt. The order was dated September 18, 1975, and set support payments at $80.00 per month for each of Mr. Englutt's two children. The judgment of contempt was rendered on November 21, 1980, in response to a motion of Mrs. Englutt. As punishment, Mr. Englutt was fined $500.00 and confined in jail for 180 days; and as coercion he was ordered to be thereafter confined until he paid $9,920.00 in support payments and $33.00 court costs. We conditionally granted a writ of habeas corpus in order to review the legality of the contempt adjudication and order of confinement.

After his divorce, Mr. Englutt moved to California where he had several temporary jobs. While in California he sustained an on-the-job injury in March of 1979 and he later received a lump sum workers compensation settlement of $14,721.00. He returned to Texas in August of 1979. Since his return he has had a series of temporary jobs and he was employed at the time of the hearing. He is currently receiving a veteran's administration check, part of which he says has been set aside and designated for his children. He conceded that he had paid none of the required support payments, but stated that he intends to ultimately give the children the amounts that are due them. Mrs. Englutt has made at least two previous attempts to enforce the support order. She filed a motion for contempt in the Collin County District Court on June 19, 1980. In that proceeding Mr. Englutt was held in contempt and placed in jail under an order which set his punishment at a $100.00 fine and 24 hours in jail, or until he purged himself of contempt by paying $9,280.00 in support arrearages, plus court costs and attorney's fees. The Texas Supreme Court, on application for writ of habeas corpus, held that the contempt order provided alternative methods by which Mr. Englutt could obtain his release, and that since he complied with one of them, he was entitled to be released. See *Ex Parte Englutt*, 608 S.W.2d 610 (Tex.1980). On the same day of

the Collin County contempt order the case was transferred to Fannin County. The action which resulted in the adjudication now before this Court was filed by Mrs. Englutt in Fannin County on October 17, 1980.

Mr. Englutt first contends that the judgment of contempt cannot stand because he was and is totally unable to comply with the support order or to purge himself of contempt by paying the arrearage. A contempt adjudication for non-support will be considered void if the evidence at the hearing conclusively establishes that the contemner had no funds, and no source from which he might obtain the funds, with which to comply with the court order or to purge himself of contempt. *Ex Parte Ramzy*, 424 S.W.2d 220 (Tex.1968); *Ex Parte Rohleder*, 424 S.W.2d 891 (Tex.1967). In such a case, the condemnor has the burden of presenting evidence which conclusively establishes his inability to comply. *Ex Parte Lindsey*, 561 S.W.2d 572 (Tex.Civ. App.—Dallas 1978, no writ); *Ex Parte Loftin*, 522 S.W.2d 591 (Tex.Civ.App.—Tyler 1975, no writ). Such proof consists of these elements:

1. That the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sums; and

2. That the relator has unsuccessfully attempted to borrow the necessary sums from financial institutions such as banks, credit unions and loan companies; and

3. That the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

See *Ex Parte Lindsey*, supra.

We do not believe Mr. Englutt has satisfied his burden in this regard. He testified that he had no property except a 1975 Dodge Van which was not in operating condition, and that he is partially disabled and only works part-time. He also testified that he has no property that he can sell or mortgage and has unsuccessfully tried to borrow money from his brother. There is testimony, however, that he does work part-time, has some income, and receives a veteran's administration check. He has not established a complete lack of funds or income, or that he lacks sufficient funds, after paying necessary living expenses, to pay child support. In addition, he has not exhausted all efforts to obtain loans as required in the third element mentioned above. Much of Mr. Englutt's testimony on the points he did cover is uncertain and conclusionary. Under the circumstances we cannot say that his inability to comply with the order was conclusively established.

It is next contended that the support order is too vague to support the contempt adjudication. We disagree. The amended order provides that the payments of $80.00 per month for each of the children were to commence on September 1, 1975, and were to be paid "... until the child with respect to whom payments are made shall attain the age of 18...." The order further provides that "... All other terms and provisions of the previous orders of this Court entered in this cause shall remain in full force and effect, except as modified herein." Included in those previous orders is the divorce decree of May 20, 1975, which set out fully the original terms of support. That decree states that payments are to be paid the first day of each month and that they are to be made payable to Martha Ann Englutt and mailed to the Collin County Courthouse at McKinney, Texas.

Mr. Englutt also asserts that the contempt adjudication violates the United States Constitution's prohibition against double jeopardy. See U.S.Const. Amend. V. First, he argues that because he was convicted in Fannin County on March 25, 1980, of a criminal charge for failure to support his children, his punishment by the contempt adjudication involved here constitutes a second punishment for the same act and violates the double jeopardy prohibition.

The contempt adjudication here is a dual one. It first orders that "... punishment be and is hereby assessed at a fine of

$500.00 and confinement . . . for a period of 180 days." It next contains a coercive order that Mr. Englutt " . . . shall *thereafter* be further confined . . . until (he) . . . has: (1) Paid $9,920.00 . . . (2) Paid $33.00 as costs . . .". (Emphasis added.)

In this era of enlightened constitutional interpretation and expanded constitutional protection, it is recognized that, while a purely coercive confinement for contempt will not constitute a criminal conviction for purposes of the double jeopardy prohibition, *Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. Morales*, 566 F.2d 402 (2nd Cir. 1977), a flat confinement as punishment only for an act constituting contempt does constitute such a conviction, and cannot lawfully be imposed for the same act for which punishment has previously been imposed in a criminal prosecution. See *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Ex Parte Payne*, 598 S.W.2d 312 (Tex.Civ.App.-Texarkana 1980, no writ); *Ex Parte Brown*, 574 S.W.2d 618 (Tex.Civ. App.-Waco 1978, no writ); Solender, *Family Law: Parent And Child*, 34 Sw.L.J. 176 (1980).[1]

Because Mr. Englutt's first 180 days of confinement were for punishment only, with the coercive confinement only to follow "thereafter", in the words of the order, it is clear that his confinement during the first 180 days constituted criminal punishment for purposes of double jeopardy. However, the record in this case establishes that Mr. Englutt failed to pay any of the monthly support installments. Each failure was therefore an act of contempt. The criminal non-support conviction was on March 25, 1980. The contempt adjudication was not entered until the 21st of November of 1980, and the record clearly shows that Mr. Englutt was in violation of the court's order for each of the months subsequent to March of 1980, being some eight (8) months. Those were offenses in disobedience of the court order, for which Mr. Englutt had not been punished in the prior criminal proceed-

ing. Thus, the punishment for the period of time after the criminal conviction could properly be imposed without violating the double jeopardy prohibition.

The second double jeopardy claim involves the prior adjudication of contempt, after which our Supreme Court released Mr. Englutt on writ of habeas corpus. The basis of the claim is that the Supreme Court held that he had purged himself of contempt in that instance, and therefore he cannot again be held in contempt for the same offense. See *Ex Parte Payne*, supra. We agree with the rule cited but disagree with the attempted application. In our view, the Supreme Court did not hold that Mr. Englutt purged himself of the contempt by paying his fine. The court there simply held that by ordering him fined $100.00 and confined for 24 hours *or* until he purged himself of contempt by paying $9,280.00 back child support, the district court provided alternative methods for his release, and he earned his release by complying with one of those methods. In those peculiar and narrow circumstances, we find that the release from the former commitment did not preclude a subsequent confinement until the arrearage is paid.

Lastly, Mr. Englutt argues that there was not sufficient evidence of the amount of the arrearage. On the contrary, the record conclusively establishes the amount of arrearage. Mr. Englutt admitted that he had paid no child support. The order required him to pay $160.00 per month commencing on September 1, 1975. The motion for contempt was filed on October 17, 1980. There is a total of 62 months from September 1975 to October 1980, and 62 times the amount of support totals $9,920.00, which is the exact amount of the arrearage he was ordered to pay.

For the reasons stated the writ is denied and relator is remanded to the custody of the Sheriff of Fannin County, Texas.

1. Early Texas cases had held to the contrary. See *Ex Parte Winfree*, 153 Tex. 12, 263 S.W.2d 154 (1953); *Ex Parte Allison*, 99 Tex. 455, 90 S.W. 870 (1906).