

# The Attorney General of Texas

June 21, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

J1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Ron Felty
District Attorney
Hale and Swisher Counties
Hale County Courthouse
Plainview, Texas    79072

Opinion No.  JM-176

Re:  Procedures for revocation of probation under section 14.12(a) of the Family Code of person in contempt of court for refusal to make child support payments

Dear Mr. Felty:

You have requested this office's opinion regarding the procedures applicable to the revocation of probation imposed pursuant to section 14.12 of the Texas Family Code. Your inquiry concerns the proper role of the state in the prosecution of violations of probation under this section, and the applicability of sections of the Code of Criminal Procedure to "child support" probation. In particular, you seek answers to four questions:

> 1.  Are violations of section 14.12(a) probation to be prosecuted by the state?
>
> 2.  If such violations are to be prosecuted by the state, are they to be handled by the district or county attorney?
>
> 3.  Are section 14.12(d) probationers entitled to court appointed counsel at a revocation if they are indigent?
>
> 4.  Do the bail and notice provisions of article 42.13 of the Code of Criminal Procedure apply to a section 14.12(d) probationer?

In the brief accompanying your request, you contend that the dispositive question is whether contempt as provided in section 14.12 is civil or criminal in nature. You consider the relationship between sections 14.09 and 14.12 of the Family Code and rule 308-A of the Texas Rules of Civil Procedure, and conclude that section 14.12 is an incident of civil contempt. You further conclude that the state is not responsible for prosecuting violations of section 14.12 probation

and that section 14.12 probationers are not entitled to court-appointed counsel. We disagree with your final conclusion.

We observe at the outset that the procedures you inquire about are those applicable to the revocation of probation, not to the enforcement of a contempt order. However, in light of your conclusions regarding the nature of the contempt provided by section 14.12, a discussion of contempt is warranted. Although not decisive of the issues you raise, such a discussion is instructive in approaching what we believe to be the determinative inquiry: the legislature's objective in enacting section 14.12 of the Family Code.

Contempt may be characterized as either civil or criminal. Civil contempt "consists in failing to do something which the contemnor is required to do by order of the court for the benefit or advantage of a party to the proceeding; while a criminal contempt is all these acts of disrespect to the court or its process," i.e., instances in which the state alone has an interest in enforcement. Ex parte Wolters, 144 S.W. 531, 587 (Tex. Crim. App. 1911). Despite this distinction, our supreme court has declared that "a contempt proceeding is unlike a civil suit, has some of the incidents of a trial for crime, and is quasi-criminal in nature." Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex. 1967); Ex parte Davis, 344 S.W.2d 153 (Tex. 1961). Accordingly, proceedings in contempt cases should conform as nearly as practical to those in criminal cases. Deramus v. Thornton, 333 S.W.2d 824 (Tex. 1960); Ex parte Stanford, 557 S.W.2d 346 (Tex. Civ. App. - Houston [1st Dist.] 1977, no writ). Relying upon these distinctions, you conclude that the contempt envisioned by sections 14.09 and 14.12 of the Family Code is civil in nature. One Texas court, however, has reached the opposite conclusion:

> Because the order punishes relator for a completed act which affronted the dignity and authority of the district court, the contempt is classified as criminal. Since relator violated the [court's] order outside the presence of the court, the contempt is a constructive contempt.

Ex parte Wilson, 559 S.W.2d 698, 700 (Tex. Civ. App. - Austin 1977, no writ). Other courts have reached the same conclusion. See Furtado v. Furtado, 402 N.E.2d 1024 (Mass. 1980). Whether classified as civil or criminal, contempt proceedings invariably invoke certain aspects of the criminal process. Section 14.12 may be viewed as the legislature's attempt to observe the courts' monition concerning the quasi-criminal nature of contempt. The extent to which section 14.12 relies on the criminal process must be determined from the legislative intent of that statute. The inquiry into legislative intent must necessarily be prefaced by an investigation of the conditions prompting the legislature to enact section 14.12.

Prior to 1981, there existed only two methods of enforcing child support orders in Texas:  (1) contempt and (2) reduction of the arrearage to judgment.  See Family Code §14.09.  The purpose of section 14.09 is to provide the courts with an efficient means of enforcing payment of child support obligations.  Harrison v. Cox, 524 S.W.2d 387, 392 (Tex. Civ. App. - Fort Worth 1975, writ ref'd n.r.e.). The provisions of section 14.09, coupled with the requirements of Rule 308-A of the Texas Rules of Civil Procedure, make enforcement of a contempt order particularly arduous when the obligor parent is unwilling or unable to comply with the order.  The notice requirements of these provisions also allow the defaulting parent to escape his/her obligation by secreting himself/herself from law enforcement authorities.  Testimony on House Bill No. 985, House Judiciary Committee, public hearing, recorded May 20, 1981.  Imprisonment of a contemnor without providing that person with notice or a hearing violates the requirements of due process.  Ex parte Sauser, 554 S.W.2d 239, 240 (Tex. Civ. App. - Dallas 1977, no writ).  Furthermore, contempt orders arising from a failure to make court ordered child support payments are often an empty remedy, rendered unenforceable upon a showing of

(1)  insufficiency of notice and/or absence of a hearing, Ex parte Pena, 636 S.W.2d 741 (Tex. App. - Corpus Christi 1982, no writ); Ex parte Bush, 619 S.W.2d 298 (Tex. Civ. App. - Tyler 1981, no writ); Ex parte Eureste, 614 S.W.2d 647 (Tex. Civ. App. - Austin 1981, no writ); Ex parte Hoover, 520 S.W.2d 483 (Tex. Civ. App. - El Paso 1975, no writ);

(2)  contemnor's inability to purge self of contempt (i.e., inability to make payments), Ex parte Englutt, 619 S.W.2d 279 (Tex. Civ. App. - Texarkana 1981, no writ); Ex parte Sanders, 608 S.W.2d 343 (Tex. Civ. App. - Houston [14th Dist.] 1980, no writ); and

(3) vagueness, uncertainty, or lack of specificity in contempt order, Ex parte White, 616 S.W.2d 340 (Tex. Civ. App. - San Antonio 1981, no writ); Ex parte Finn, 615 S.W.2d 293 (Tex. Civ. App. - Dallas 1981, no writ); Ex parte Quevedo, 611 S.W.2d 711 (Tex. Civ. App. - Corpus Christi 1981, no writ).

See Solender, Annual Survey of Texas Law:  Family Law:  Parent and Child, 36 Sw. L.J. 155, 178 (1982) and cases cited therein.

In addition to the procedural difficulties inherent in a contempt action, a parent seeking to enforce a contempt order faces other

barriers.  Even if successful, a dependent parent is often left with a Pyrrhic victory:

> The remedy of civil contempt puts an expensive and onerous burden on the dependent parent who, even as a result of such action, would receive nothing from an obligor parent who is not in a position to pay.  A jail term following from criminal contempt profits no one.  Finally, reduction to judgment is also not effective against an obligor parent who disposes of non-exempt property and spends his earnings as quickly as possible, or who moves out of the county or state.

Bill Analysis to Senate Bill No. 105 (companion to House Bill No. 985), prepared for Senate Committee on Judiciary, filed in Bill File to Senate Bill No. 105, 67th Leg., Legislative Reference Library.  The end result was summarized in a report to the Senate Committee on Jurisprudence:

> A recent study . . . contends that fully 75 percent of absent parents who were unwilling to pay were able to escape their obligation.  And of all fathers under court-ordered child support obligations, almost half paid less than ten percent of the court-stipulated amount. (Footnotes omitted).

Report to the Senate Committee on Jurisprudence, Issues in Child Support Enforcement, January 1981, at 1.

In view of the inadequacies of enforcement proceedings initiated by private individuals, the Sixty-seventh Legislature undertook to provide an alternative scheme that not only enhances the chances of collecting child support payments, but also preserves constitutionally guaranteed rights and privileges of all parties.  The product of that undertaking, section 14.12 of the Family Code, is reproduced in germane part:

> (a)  If the court finds that a person who has been ordered to make payments for the support of a child is in contempt of the court for the failure or refusal to make a payment, <u>the court may suspend the imposition of the court's order of commitment and place the person on probation on the condition that the person shall continue the court-ordered child support payments with court costs and on other reasonable conditions that the court requires.</u>

> The terms and conditions of probation may include but shall not be limited to the conditions that the probationer shall:
>
> 1. report to the probation officer as directed;
>
> 2. permit the probation officer to visit him at his home or elsewhere;
>
> 3. obtain counseling on financial planning, budgeting management, alcohol or drug abuse, or other matters causing the defendant to fail to pay the child support payments;
>
> 4. pay all court costs.
>
> . . . .
>
> (c) A court granting probation may fix a fee not exceeding $10 per month to be paid to the court by the probationer during the probationary period. The court may make payment of the fee a condition of granting or continuing the probation.
>
> The court shall deposit the fees received under this section in the special fund of the county treasury provided by Subsection (b) of Section 4.05 of Article 42.121, Code of Criminal Procedure, 1965, to be used for the provision of adult probation or community-based adult corrections services or facilities other than a jail or prison.  (Emphasis added).

Reports and testimony prior to the enactment of section 14.12 indicate that this statute was intended to codify the practice of many courts to suspend or defer enforcement of contempt orders to allow the willing parent to comply with his/her obligation. See Report to the Senate Committee on Jurisprudence, supra, at 20; Testimony on House Bill No. 985, supra. See generally, Anderson v. Burleson, 583 S.W.2d 467 (Tex. Civ. App. - Houston [1st Dist.] 1979, no writ); Ex parte Hart, 520 S.W.2d 952 (Tex. Civ. App. - Dallas 1975, no writ). The underscored language above affirms this inference. We also note the similarity between the quoted language of section 14.12 and article 42.13, section 3d of the Code of Criminal Procedure, the Misdemeanor Adult Probation and Supervision Law.

The "probation" imposed pursuant to this subsection and article 42.12, section 3d(a) (for felonies) is not probation in the strict sense. Rather, Texas courts have referred to this procedure as

"deferred adjudication," permissible under the terms of article III, section 1 of the Texas Constitution. McNew v. State, 608 S.W.2d 166, 176 (Tex. Crim. App. 1980). Because of these similarities, we conclude that "probation" as contemplated by section 14.12 of the Family Code is an analogue to deferred adjudication as provided in article 42.13, section 3d of the Code of Criminal Procedure. We note, however, that section 14.12 does not incorporate every provision of article 42.13 -- we cannot, therefore, unequivocally declare that the legislature intended every provision of article 42.13 to apply to section 14.12 probationers. The answers to your questions are dependent upon the extent to which these statutes interact.

Upon the enactment of section 14.12, Texas became the first state to authorize statutorily probated contempt in child support cases. One may reasonably question the use of criminal proceedings in what are essentially civil matters; other states, however, regularly employ the practice of probating contempt orders in non-criminal settings, especially in cases affecting minors (e.g., child support, custody, truancy). See generally, In re G.B., 430 N.E.2d 1096 (Ill. 1981); Furtado v. Furtado, supra; Anderson v. Anderson, 109 N.W.2d 571 (Minn. 1961); Hill v. Hill, 33 N.W.2d 678 (Mich. 1948). Given the criminal and punitive connotations of the word "probation" and the potential for adverse stigmatization of persons placed on probation, courts have utilized this remedy sparingly. Interim Report on Child Support Enforcement in Texas, Senate Subcommittee on Public Health and Welfare, Sixty-seventh Legislature, December 1982, at 15. The hesitancy of the courts to use section 14.12 comports with what we construe to have been the legislature's intent -- that the benefits of probation inure to the collection of child support obligations. Among these benefits are the protections accorded persons granted probation.

Persons granted probation are provided an array of constitutional protections. See Gagnon v. Scarpelli, 411 U.S. 778 (1973); Ruedas v. State, 586 S.W.2d 520 (Tex. Crim. App. 1979). But see Frazier v. State, 600 S.W.2d 271 (Tex. Crim. App. 1979); Bowen v. State, 649 S.W.2d 384 (Tex. App. - Fort Worth 1983, no writ). The court of criminal appeals has declared that "[t]he proceeding to revoke probation, although not the same as a criminal trial, requires substantially all the same procedure." Whisenant v. State, 557 S.W.2d 102, 104 (Tex. Crim. App. 1977). The Texas procedures for revocation of probation afford probationers greater protection than the minimum required by Gagnon v. Scarpelli. Ruedas v. State, supra; Whisenant v. State, supra. Among these protections is the representation of probationers by counsel in a proceeding to revoke probation. Parker v. State, 545 S.W.2d 151 (Tex. Crim. App. 1977). Persons subject to probation by deferred adjudication are entitled to similar representation. Thompson v. State, 626 S.W.2d 750, 753 (Tex. Crim. App. 1981). See also Fuller v. State, 653 S.W.2d 65 (Tex. App. - Tyler 1983, no writ). An indigent probationer may request representation and is entitled to receive court appointed counsel.

See Code Crim. Proc. arts. 26.04 and 42.13, §3b; Ex parte Jentsch, 510 S.W.2d 320 (Tex. Crim. App. 1974); Ex parte Shivers, 501 S.W.2d 898 (Tex. Crim. App. 1973). Consequently, we answer your third question affirmatively and conclude that section 14.12 probationers who are indigent are entitled to appointed counsel.

Our analysis of this question has recently met with the approval of two courts considering similar questions. The Fort Worth Court of Appeals, after agreeing that contempt proceedings are quasi-criminal, held the procedure to be followed in contempt cases before civil courts is the same as that observed in criminal cases. Ex parte Byram, No. 2-83-181-CV (Tex. App. - Fort Worth, Dec. 1, 1983, no writ) (not yet reported). The United States Court of Appeals for the Fifth Circuit reached a comparable conclusion, holding that due process requires that an indigent person held in contempt for failure to make court-ordered child support payments receive the assistance of court-appointed counsel in such proceedings. Ridgway v. Baker, 720 F.2d 1409 (5th Cir. 1983). The court declared that the right to counsel turns not on the characterization of a proceeding as either "criminal" or "civil," but upon whether a deprivation of liberty may result. Id. at 1413. Bearing this point in mind, the court concluded that in child support proceedings in this state, defaulting parents face the possibility of receiving both civil and criminal sanctions. Id. at 1414. Finally, the court considered the suggestion that imposing the responsibility of providing counsel on the state would prove too expensive and administratively difficult a burden:

> To some degree, the concern appears to be paradoxical. If the contemnor is so lacking in means that he cannot afford counsel, he is not likely to be able to pay child support. Under Texas law, if the accused contemnor does not have the means to pay the arrearage, he cannot be committed to jail for the purpose of coercing him to make such payments. A contemnor can be incarcerated only for failure to pay with his present funds, in which case he is not indigent, or for what the state classifies as criminal contempt, in punishment for his past contemptuous behavior, and then only if it is determined that he could have made those payments when they became due. If the parent is indeed indigent the state may obviate the need for counsel by announcing that imprisonment will not result from the proceeding. Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). If it holds the threat of jail over the defendant, however, it must accord the defendant facing it due process, including the right to counsel.

Ridgway v. Baker, supra, at 1415.  Thus, when a proceeding harbors the threat of imprisonment, as it certainly does in probation revocation, the right to counsel, retained or appointed, cannot be denied.

Regarding your fourth question, we observe that although bail may be authorized pending probation revocation proceedings within the discretion of the court, Ex parte Ainsworth, 532 S.W.2d 640 (Tex. Crim. App. 1976), a person subject to a deferred adjudication is entitled to bail under article I, section 11 of the Texas Constitution.  Ex parte Laday, 594 S.W.2d 102, 104 (Tex. Crim. App. 1980) (en banc).  In consonance with the decisions of the court of criminal appeals and our foregoing determinations, we conclude that section 14.12 probationers are entitled to bail pending revocation proceedings.  The provisions of section 8(a) of article 42.13 to which you direct our attention are applicable in the event that bail is denied.  Given the legislature's intention that willing obligor parents be afforded every opportunity to comply with his/her child support obligation and the prohibition against imprisonment of section 14.09 contemnors who are unable to make support payments, Ex parte Englutt, supra, it follows that section 8(a) of article 42.13 of the Code of Criminal Procedure applies in the highly unlikely event that a section 14.12 probationer is detained pending revocation proceedings. We answer your fourth question, therefore, in the affirmative.

You ask about the role of the state in proceedings to revoke probation imposed pursuant to section 14.12 of the Family Code.  The discussion thus far makes it clear that section 14.12 probation requires significant involvement of the state.  The legislature's manifest purpose in enacting section 14.12 was to invoke the resources of the state to relieve the dependent parent of the financial strain attendant to the private system of enforcement, to ensure compliance with child support obligations, and to allow willing parents another opportunity to meet such obligations.  We, therefore, believe it is also within the contemplation of the legislature that the state bear the burden of prosecuting violations of section 14.12 probation.

Your second question asks whether the district or county attorney is responsible for prosecuting section 14.12 violations.  We note that jurisdiction over family matters is vested in district courts, family district courts, and certain statutory courts having concurrent jurisdiction with the district courts in family law matters.  See Tex. Const. art. V, §8 (divorce cases); V.T.C.S. art. 1926a (Family District Court Act); Family Code §§11.01(2) (suits affecting parent-child relationship, including child support) and 21.03(4) (suits under Uniform Reciprocal Enforcement of Support Act); V.T.C.S. art. 1970-358, §2(e) (county court of Hays county -- concurrent jurisdiction over family law matters with district court in Hays County); V.T.C.S. art. 1970-360, §3(b) (county court of Webb County); V.T.C.S. art. 1970-367, §3(b) (county court of Walker County); Armstrong v. Reiter, 628 S.W.2d 439 (Tex. 1982) (jurisdiction over

family matters rests exclusively in district courts and such other courts as have concurrent jurisdiction by statute). Article V, section 21 of the Texas Constitution provides that in counties with both a county attorney and a district attorney, the legislature shall regulate their respective duties. This office has previously observed that the courts of this state construe this provision to confer no authority on the county attorney to act in respect to a duty which the legislature has not granted to the office. Attorney General Opinion H-343 (1974) and cases cited therein. In view of the forum involved in section 14.12 actions, we conclude that violations of that section are to be prosecuted by the district attorney or the prosecuting attorney who performs the functions of district attorney in that county. We remind you that section 14.12 of the Family Code is an extraordinary remedy rarely invoked by the courts and that the legislature intended this section to facilitate, rather than stifle, the collection of child support payments. Hence, we expressly limit this opinion to apply in the improbable event that the obligor parent refuses to satisfy the conditions of section 14.12.

S U M M A R Y

In proceedings to revoke probation imposed pursuant to section 14.12 of the Family Code, the state is to be represented by the district attorney or the prosecuting attorney who performs those functions of the district attorney in certain counties. Under this section, indigent probationers are entitled to court appointed counsel at revocation hearings. The bail and notice provisions of article 42.13(8)(a) of the Code of Criminal Procedure apply in the unlikely event that a section 14.12 probationer is detained pending revocation proceedings.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton