**Ex parte Jim HUDSON, Relator.**

**No. 94–1294.**

Supreme Court of Texas.

Feb. 9, 1996.

William E. Trantham, Michele I. Ritter, Dallas, for relator.

John L. Hubble, Harvey G. Joseph, Dallas, for respondent.

### PER CURIAM.

In this original habeas corpus proceeding Jim Hudson seeks relief from an order of the district court that he be fined and jailed in punishment for his violation of an injunction, and that he remain confined until he has complied with the injunction. We agree with Hudson that the order punishes him more than once for the same offense, and we therefore set aside the punishment portion of the order. We do not agree, however, with Hudson's challenges to the coercive portion of the order.

The City of Mesquite annexed land owned by Hudson and his mother on which Hudson operated an auto body shop and junk yard. The City set a deadline for the Hudsons to discontinue this use of their property since it did not conform to City ordinances. On appeal by the Hudsons, the district court by

judgment dated April 14, 1986 upheld the City's ruling, found that the land's condition and use violated various ordinances and was a common law nuisance, and enjoined the Hudsons to immediately:

> Remove all buses, automobiles, and aircraft and parts and portions [thereof] together with all salvage items, scrap metal, junk, trash and debris and all items stored on said property and cease and desist from storing of such items thereon until such time as such land shall lawfully be zoned....

> Remove all structures on the premises or repair same to meet City of Mesquite code requirements....

> \*   \*   \*   \*   \*   \*

> Clear and clean premises and cut and remove grass and weeds and maintain same in a sightly condition.

The judgment also provided that:

> Automotive painting and repairs may be conducted within an existing metal building without substantial structural alteration.

> ... Damaged vehicles may be stored outside when screened in accordance with City's outside storage requirements ... but are limited to passenger type vehicles and small trucks or vans (under two ton rated carrying capacity) and specifically excluding buses and large (over two ton) trucks. Outside storage of such vehicles is limited to vehicles on the premises for repair and a maximum period of six months for which any one vehicle may remain on the premises. No vehicles may be on the premises for the salvage of parts. Repaired vehicles may be sold from the premises but no general used automobile sales lot may be operated. Repaired vehicles shall be deemed vehicles on which substantial repairs have been performed of a fair market value of not less than [$300] and no more than six (6) vehicles may be displayed for sale at one time.

A few days later the City moved for contempt. In an order issued May 9, 1986, the district court denied the City's motion. By order issued December 2, 1986, however, presumably in response to a second motion

for contempt, the district court adjudged Hudson guilty of contempt and fined him $740. The district court again found Hudson in contempt on September 10, 1987, and fined him $25 per day from October 14, 1986 through July 20, 1987, a total of $7,000. In 1990, the City again moved for contempt but apparently abandoned its motion before the district court ruled on it.

In 1994 the City moved for contempt yet again. This time the case was tried to a jury. The jury found that Hudson had willfully violated the injunction continuously from July 21, 1987 to October 18, 1994—2,644 days. Based upon the verdict, the district court fined Hudson $30,000, and ordered him jailed for thirty days and until he complied with certain terms of the original injunction, specifically:

> (1) remove all buses, automobile and aircraft and parts and portions of buses, automobiles and aircraft together with all salvage items, scrap metal, junk, trash, and debris and all items stored on said property;

> (2) remove or repair to City Code the structures other than the metal building in which the auto paint and body work is conducted; and

> (3) clear and clean the premises.

The judge explained from the bench that $30,000 was a reasonable fine, given the number of days Hudson was clearly in violation, and that although "it may be that each day was not a separate act," the "days during which the refusal to obey occurs should be some indication of the degree of punishment which should be rendered."

Hudson did not pay the fine or otherwise act to purge himself of contempt. The court of appeals denied his petition for writ of habeas corpus. This Court ordered him released on $1,000 bond.

Hudson argues that he has been punished more than once for the same offense and, because of the several prior contempt proceedings, has been put in jeopardy more than once for the same violation. In *Ex parte Genecov*, 143 Tex. 476, 186 S.W.2d 225 (1945), this Court explained:

It would hardly be contended that after a court has punished a party to the limit of the statute for a violation of its injunction and such party has paid the penalty imposed upon him, he could thereafter violate the injunction with impunity and the court would be powerless to punish him therefor.... *Neither could it reasonably be contended that the trial court could divide one contemptuous act into thirty separate acts and assess the maximum punishment provided by statute for each of such acts. Had the relator been charged with but one continuous act of polluting the streams, and had the court concluded that each day or each hour of his violation constituted a separate and distinct contemptuous act, relator's points would be well taken.*

*Id.* 186 S.W.2d at 226 (emphasis added). In *Genecov,* the underlying contempt motion charged relator with 36 separate, distinct and independent violations, extending over a period of nine months, of an injunction forbidding discharge or deposit of saltwater and polluting substances from oil wells into the rivers. The trial court found 30 violations and assessed as punishment for each act a $50 fine and 24 hours' confinement.

■ This case, in contrast, represents the situation cautioned against in *Genecov.* The City's evidence did not show separate and distinct violations of the injunction; rather it showed that the condition of the property had not changed since 1986 when the injunction issued. The City carved Hudson's continuing failure to comply with the injunction into daily offenses. The City might as well have argued that Hudson violated the injunction once every hour, or every minute, that he failed to act. Hudson was charged with, tried on, and found guilty of a single offense. The fine for a contempt may not exceed $500. Tex.Gov't Code § 21.002(b). Moreover, a single act of contempt, once it has been punished, cannot be repunished with ever larger fines or jail terms. Given the punishments previously assessed, neither the $30,000 fine nor the 30–day punitive sentence can stand. *See Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975); *Yates v. United States,* 355 U.S. 66, 68, 78 S.Ct. 128, 130, 2 L.Ed.2d 95 (1957); *Genecov,* 186 S.W.2d at 226; *Ex parte*

*Payne,* 598 S.W.2d 312, 316–17 (Tex.Civ.App.—Texarkana 1980, orig. proceeding), *disapproved on other grounds in Huff v. Huff,* 648 S.W.2d 286 (Tex.1983) (ten-year, and not four-year, limitations period applied); *Ex parte Englutt,* 619 S.W.2d 279, 282 (Tex.Civ.App.—Texarkana 1981, orig. proceeding).

■ The flaw in the punitive portion of the district court's order does not extend to the coercive portion. Double jeopardy principles generally do not apply to an order assessing solely coercive confinement when a contemnor can obtain release by purging contempt. See *Menna,* 423 U.S. at 62, 96 S.Ct. at 242; *Yates,* 355 U.S. at 74, 78 S.Ct. at 133; *Ex parte Englutt,* 619 S.W.2d at 282.

■ Hudson contends, however, that the contempt judgment is void as a whole because the injunction to "maintain the land in a sightly condition" does not set forth his duties and obligations in clear, specific and unambiguous terms and sets a standard too vague and indefinite to be enforced by contempt. We disagree. Under the circumstances of this case, the injunction is sufficiently specific to apprise Hudson of the actions required of him. The evidence in the record indicates that the condition of Hudson's property has remained unchanged since the injunction first issued. *Cf. Ex parte Crawford,* 684 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding) (no child support, in any amount, was paid). Moreover, Hudson does not otherwise contend that he is or would be unable to perform the conditions for purging himself of contempt. *See Ex parte Dustman,* 538 S.W.2d 409, 410 (Tex. 1976) (orig. proceeding) (whether condition for purging contempt is impossible of performance); *Ex parte Ramzy,* 424 S.W.2d 220, 223 (Tex.1968). We also reject, without elaboration, Hudson's arguments that the district court lacked jurisdiction to issue the injunction and that it was void for failure to comply with Rule of Civil Procedure 692.

Accordingly, a majority of the Court, without hearing oral argument, grants Hudson's petition to set aside that portion of the contempt judgment that assesses a fine and a

fixed jail sentence, but denies all other relief requested. TEX.R.APP.P. 122. Because Hudson may have brought his property into compliance with the district court's orders during the pendency of this proceeding, we extend our order admitting Hudson to bond to such time as the district court hears and determines the necessity for coercive confinement and issues a new order of commitment. Upon issuance of such an order, our order admitting Hudson to bond shall automatically expire, and Hudson shall be subject to custody by the sheriff.