THE STATE OF OHIO, APPELLEE, *v.* KIMBLER, APPELLANT.

(No. 86AP-477 — Decided December 9, 1986.)

*Michael Miller,* prosecuting attorney, and *Bonnie Maxton,* for appellee.

*James Kura,* county public defender, and *John W. Keeling,* for appellant.

WHITESIDE, J. Defendant, Edgil E. Kimbler, appeals from a judgment of the Franklin County Court of Common Pleas and raises a single assignment of error as follows:

"The trial court erred by overruling the defendant's motion to dismiss on the grounds of double jeopardy."

Defendant was indicted for the offense of child stealing in violation of R.C. 2905.04 involving his own children, the custody of whom had been awarded to their mother and ·his former wife by the Domestic Relations Division of the Franklin County Court of Common Pleas. Defendant filed a motion to dismiss the charges upon the ground of former jeopardy. He contends that he had previously been found guilty of contempt and sentenced to ten days' imprisonment by the Domestic Relations Division of the Franklin County Court of Common Pleas for violation of the custody order. The trial court overruled defendant's motion, finding the present charge not to be barred by double jeopardy since the contempt proceedings did not involve a criminal offense and since the offense herein dif-

fers from the contempt charge in any event.

The evidence as to the proceedings in the domestic relations division with respect to the contempt charge is somewhat sketchy. However, attached to defendant's motion to dismiss in the trial court is a xerographic copy of a motion filed by defendant's former wife on September 25, 1984, moving for the court to order defendant "to appear and show cause why he should not be held in contempt for his failure and refusal to comply with the order of this court relative to child custody." Also attached to defendant's motion in the trial court is a copy of an entry of the domestic relations division awarding custody of the minor children to their mother, defendant's former wife, effective August 17, 1984. An affidavit in support of the motion in contempt states that: "* * * [D]uring defendant's regularly scheduled visitation, Defendant has failed to comply with the order of the Court wherein he was to return the children at the appointed time and has failed and refused to do so. * * *" The record on appeal includes a transcript of proceedings in the domestic relations division on December 27, 1984, pertaining to the charge of contempt. Also attached to defendant's motion to dismiss is an order of the domestic relations division sentencing defendant to ten days in jail for contempt, which order is dated January 3, 1985. There are also copies of some of the filings in the domestic relations division proceedings attached to the state's memorandum opposing the motion to dismiss, including a capias dated February 25, 1985, ordering the immediate arrest of defendant because he had been found guilty of contempt.

The indictment herein alleges that defendant, in violation of R.C. 2905.04, "* * * did by any means and with purposes to withhold a minor, to wit: Kelly Kimbler, being four (4) years of age, from the legal custody of his parent, guardian, or custodian, did remove the said Kelly Kimbler from the place where he was found. * * *" Defendant requested a bill of particulars, and in response the prosecuting attorney stated in a bill of particulars as follows:

"With respect to count one of the indictment, the prosecution alleges that on or about September 12, 1984, at or about or in the general vicinity of 2905 Ontario, within Franklin County, Edgil E. Kimbler, in violation of Section 2905.04, Revised Code of Ohio, did not return the child. The defendant picked up Kelly Kimbler from his legal guardian on September 10, 1984, and failed to return the child as requested on September 12, 1984."

In *Benton* v. *Maryland* (1969), 395 U.S. 784, the United States Supreme Court declared the double jeopardy provision of the Fifth Amendment to the United States Constitution to be applicable to the states through the Fourteenth Amendment, overruling *Palko* v. *Connecticut* (1937), 302 U.S. 319, which had held to the contrary. In *Waller* v. *Florida* (1970), 397 U.S. 387, 52 O.O. 2d 320, the United States Supreme Court declared that double jeopardy exists where an offender is first prosecuted for violation of a city ordinance and then charged with a violation of state law based on the same acts that were involved in the violation of the ordinance.

Predicated upon the *Waller* decision, the Supreme Court in *Colombo* v. *New York* (1970), 400 U.S. 16, remanded a case to the New York Court of Appeals for further consideration as to whether a prior contempt conviction constituted former jeopardy with respect to pending criminal charges. The New York Court of Appeals upon remand adhered to its former conclusion that the contempt conviction was in civil rather than criminal contempt, resulting in another appeal to the United States Supreme Court, which in *Colombo* v. *New York* (1972), 405 U.S. 9, held the New York

Court of Appeals had erred in finding the contempt conviction to be civil rather than criminal. The Supreme Court again remanded the case to the New York Court of Appeals for reconsideration, with the Supreme Court expressly stating that it declined to determine the double jeopardy question but, instead, remanded that question for consideration by the New York Court of Appeals, which in *People* v. *Colombo* (1972), 31 N.Y. 2d 947, 341 N.Y. Supp. 2d 97, 293 N.E. 2d 247, found the criminal contempt conviction involved to constitute former jeopardy under the circumstances, stating in its opinion at 949, 341 N.Y. Supp. 2d at 98, 293 N.E. 2d at 247:

"Although defendant could have been properly indicted for his refusal to testify before the Grand Jury on October 14, 1965, after having been granted full immunity * * * and such indictment would not be barred by double jeopardy, he was not indicted for that crime, but, instead, was indicted for his refusal to obey the order of Justice Barshay on December 7, 1965, to return to the same Grand Jury and testify. Thus, defendant was indicted for the same act and offense for which he previously was punished by Justice Barshay for contempt of court * * *." (Citation omitted.)

Defendant relies upon the *Colombo* decisions as requiring a finding herein that defendant's contempt conviction constitutes former jeopardy so as to preclude prosecution of the pending criminal charges against him. We disagree.

As indicated by the second United States Supreme Court decision in *Colombo* (1972), the criminal contempt conviction was expressly found to have been based upon Colombo's " 'contumacious and unlawful refusal after being sworn as a witness to answer any legal and proper interrogatories and for his wilful disobedience to the lawful mandate of this Court.' " *Colombo* v. *New York* (1972), at 10. Subsequently, Colombo was indicted " 'for his contumacious and unlawful refusal, after being duly sworn as a witness, to answer legal and proper interrogatories.' " *Id.* Thus, both the criminal contempt conviction and the pending indictment were predicated upon Colombo's contumacious refusal to answer questions before the grand jury. Since the very foundation of contempt is contumacious conduct, necessarily, the indictment was a charge for the identical conduct as that for which Colombo had been convicted of criminal contempt. Here, however, defendant's contempt conviction, whether civil or criminal, was based upon a contumacious violation of a court order. By the indictment herein, he is charged with the crime of child stealing, which, although arising out of some of the same conduct of defendant, is predicated upon different elements.

The state contends that defendant's contempt conviction was civil in nature and that even if it were criminal it does not constitute a criminal offense. The essential distinction between civil and criminal contempt is whether the action of the court is designed to be coercive in nature (civil) or punitive in nature (criminal). In *People* v. *Colombo, supra,* the contempt conviction was clearly punitive and criminal since the punishment was imposed despite Colombo's attempt to purge himself of the contempt by subsequently agreeing to testify before the grand jury in that case. Here, it is unclear as to the original purpose of the finding in contempt since nearly a year elapsed between such finding and the eventual imposition of punishment, with some indication that, in the interim, the children's mother had located them and regained physical custody of them, even though defendant did not return them to her. Nevertheless, the original motion in the domestic relations division was founded in civil rather than criminal

contempt, and apparently no criminal contempt proceedings were ever commenced in the domestic relations division of the trial court.

The state also relies upon *Hale* v. *State* (1896), 55 Ohio St. 210, 45 N.E. 199, and *State* v. *Johnson* (1908), 77 Ohio St. 461, 83 N.E. 702, as indicating that the mere fact that an act constituting contempt is also punishable by a criminal prosecution does not deprive a court of its authority to punish for the contempt. In *Hale,* it is specifically noted that the General Assembly cannot by enacting a statute deprive a court created by the Constitution of its inherent power to punish for contempt the commission of wrongful acts which obstruct the administration of justice. The state also notes that R.C. 2901.03 provides that "[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code," but that R.C. 2901.03(C) provides expressly that this provision does not "affect the power of a court to punish for contempt or to employ any sanction authorized by law to enforce an order, civil judgment, or decree."

However, it is unnecessary to resolve the issue as to whether the contempt citation in the domestic relations division was civil or criminal, since even if it were criminal it would not constitute former jeopardy to the present pending charge of child stealing for which defendant has been indicted.

The test to be applied to determine whether the conviction of one offense constitutes former jeopardy precluding conviction of another offense based upon the same act or same transaction has been stated as follows in *Blockburger* v. *United States* (1932), 284 U.S. 299, at 304:

"* * * The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * *" See, also, *Albernaz* v. *United States* (1981), 450 U.S. 333.

In *Gore* v. *United States* (1958), 357 U.S. 386, 389, the Supreme Court in following *Blockburger* stated in part that:

"* * * The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic. * * *"

In *Albernaz, supra,* the Supreme Court stated that one of the tests to apply is whether the legislature has manifested an intention that two separate criminal offenses be proscribed, which may be indicated by two statutes which are directed to separate evils, even though involving the same conduct. Similarly, in *United States* v. *Woodward* (1985), 469 U.S. 105, at 109, it is stated: "Finally, Congress' intent to allow punishment under both * * * is shown by the fact that the statutes 'are directed to separate evils.' "

A court has inherent power to punish disobedience of court orders as necessary for the orderly and efficient administration of justice. Similar power is conferred by R.C. 2705.02(A), which does not detract from the court's inherent power. *Zakany* v. *Zakany* (1984), 9 Ohio St. 3d 192, 9 OBR 505, 459 N.E.2d 870. R.C. 2705.01 provides that:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

R.C. 2705.02 provides as follows:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance

to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

"(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

"(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

"(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance."

As noted in R.C. 2705.01, the essential element of contempt of court is that the person to be punished obstructed the administration of justice. R.C. 2705.02 defines certain acts which constitute an obstruction of the administration of justice. Accordingly, punishment by contempt is not prompted by injury, intentional or otherwise, to the rights of another person, or by conduct which the legislature has declared to be so repugnant as to constitute a criminal offense. Rather, the essential gravamen of contempt (the evil to be remedied) is obstruction of the administration of justice, even though the conduct involved might also constitute a criminal offense under a statute designed to prevent a different evil.

In *People* v. *Colombo, supra,* the New York Court of Appeals found that the criminal statute therein involved was designed to prohibit acts constituting obstruction of the administration of justice (contumaciously refusing to testify before a grand jury), the same evil upon which the contempt condition was predicated. In this case, however, the criminal statute involved, R.C. 2905.04, is not concerned with preventing or punishing obstructions of the administration of justice but, instead, is designed to prevent child stealing, that is, the taking of a child from the person having legal custody of the child, whether taken by a noncustodial parent or a third person. R.C. 2905.04 provides in pertinent part as follows:

"(A) No person, by any means and with purpose to withhold a minor from the legal custody of his parent, guardian, or custodian, shall remove the minor from the place where he is found."

None of the elements of this offense need be proved in connection with a charge of criminal contempt for violating a court order involving custody, such as herein involved. In a contempt proceeding, it is not necessary to prove that the person violating the custody order had the purpose to withhold the child from the legal custody of his parent. Rather, it is sufficient to prove that the court order was violated, regardless of the purpose of the violator. Nor in connection with the contempt proceeding is it necessary to prove that the child was removed from the place where he was found, it being sufficient to demonstrate that the court order regarding custody was violated.

On the other hand, to obtain a conviction under R.C. 2905.04, it is unnecessary to prove that the act of taking was in violation of a court order, or that it had the effect of obstructing the administration of justice, which would be necessary elements of criminal contempt under the circumstances. Accordingly, although the same conduct may result both in criminal contempt and a violation of R.C. 2905.04, they do not constitute the same offense for double jeopardy purposes since conviction for violation of the statute requires proof of facts not required to be proved for a conviction of criminal contempt and conviction of criminal contempt requires proof of facts not required to prove a violation of the statute. Under the facts of this

case, to prove criminal contempt, it was necessary to prove only that defendant violated the court order by withholding custody of the children from the person to whom the court awarded custody. While such proof might tend to prove the purpose of the taking of the children so as to supply that element of the crime of child stealing, in connection with that offense it is unnecessary to prove violation of a court order. Rather, the existence of the court order will be relevant only to prove who had legal custody of the child. Applying the *Blockburger* test, conviction of criminal contempt in the domestic relations division does not constitute the same offense for which defendant is herein charged since proof of different elements is necessary for the criminal conviction.

Defendant also relies upon *People* v. *Gray* (1977), 69 Ill. 2d 44, 370 N.E. 2d 797. That court applied a "same evidence test," rather than the *Blockburger* test. However, even applying that test, different evidence is necessary for conviction of the criminal offense, including evidence that the children were taken from the person having legal custody of the children for the purpose of withholding them from such legal custody. The better rule is that set forth in the dissent in *Gray*, which noted that, under Illinois law, neither aggravated battery nor attempted murder requires proof of the existence of a court order or willful disobedience thereof. We decline to adopt the majority view in *Gray* as being indicative of Ohio law.

Accordingly, the trial court correctly found that defendant's prior conviction of contempt, even if it be criminal contempt, does not constitute former jeopardy so as to bar his prosecution for the pending charge of child stealing on the ground of double jeopardy. The assignment of error is not well-taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MOYER, P.J., and REILLY, J., concur.