**Thomas Hiram WILLIAMS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–88–00262–CR.**

Court of Appeals of Texas,
San Antonio,
En Banc.

Aug. 9, 1989.

Discretionary Review Granted
Oct. 25, 1989.

---

Terrance McDonald, San Antonio, for appellant.

W.C. Kirkendall, Seguin, for appellee.

Before CADENA, C.J., and BUTTS, REEVES, CHAPA, PEEPLES, BIERY and CARR, JJ.

### ON APPELLANT'S MOTION FOR REHEARING EN BANC AND MOTION FOR REHEARING

PEEPLES, Justice.

The opinion of this Court issued April 19, 1989, is withdrawn, and this opinion is substituted.

Appellant Williams contends that the fifth amendment's double jeopardy clause and its Texas counterpart bar an indictment for attempted capital murder because he was earlier held in contempt of court and punished for the same episode, which violated a civil injunction against physical contact or bodily injury. The trial court denied his request for a writ of habeas corpus, and he appeals.

The essential facts are not disputed. In a civil lawsuit Thomas Williams was enjoined in March of 1987 from "causing or threatening to cause physical contact or bodily injury to the Defendants [Robert and Robbie Buffington]." On June 18, 1987, Williams shot both Buffingtons with a shotgun, and on November 24, 1987 he was held in contempt of court for causing bodily injury in violation of the March 1987 order. The district attorney's office became aware of the contempt proceedings after the judge had ruled from the bench on November 24 but before he signed a written order of contempt and commitment on January 25, 1988, sentencing Williams to 30 days' confinement, which he has served. On January 6, 1988, Williams was indicted on two counts of attempted capital murder of the Buffingtons based upon the shooting incident.

■ Williams sought a writ of habeas corpus in district court, asking that the indictment be dismissed because the contempt adjudication and sentence should bar the criminal prosecution under double jeopardy principles.[1] He is entitled to appellate review of his jeopardy plea in this habeas corpus proceeding prior to undergoing the

---

1. The Fifth Amendment provides "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. Article I, § 14 of the Texas Const. provides as follows:

   § 14. **Double Jeopardy**
   Sec. 14. No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction. TEX.CONST. art. I, § 14.
   Concerning the Fifth Amendment, the Supreme Court has said:

   That guarantee has been said to consist of three separate constitutional protections. [1] It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense.
   *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (citations omitted). *See also Ex parte Peterson*, 738 S.W.2d 688, 689 (Tex.Crim.App.1987). Only the second protection is involved in this appeal.

trial that he contends would expose him to double jeopardy. *Ex parte Rathmell,* 717 S.W.2d 33, 34 (Tex.Crim.App.1986); *Ex parte Robinson,* 641 S.W.2d 552, 553–54 (Tex.Crim.App.1982). For the reasons set forth below, we affirm the denial of Williams' request for a writ of habeas corpus and allow the prosecution to proceed.

■ Williams relies on *Ex parte Englutt,* 619 S.W.2d 279 (Tex.Civ.App.—Texarkana 1981, no writ), and *Ex parte Brown,* 574 S.W.2d 618 (Tex.Civ.App.—Waco 1978, no writ). Both of those cases hold that the double jeopardy clause bars a contempt proceeding after the State has already prosecuted the respondent and obtained a criminal conviction for the same conduct.[2] The present appeal involves the reverse sequence; here a contempt conviction preceded the State's criminal case. That a private litigant brought the first case is an important difference between the present appeal and *Englutt* and *Brown.* If a contempt action pursued by a private litigant will bar a later criminal prosecution brought by the State, one of two things will happen: (1) private citizens who pursue motions for contempt will thereby waive society's right, acting through the district attorney, to enforce the State's criminal statutes involving the incident; or (2) judges and private litigants might hesitate to enforce court orders by contempt, at least in cases of violence, for fear of barring later criminal cases.[3]

The statutes of Texas certainly do not give private litigants this kind of power to abort criminal cases. Only the district attorney is given the authority to represent the State in criminal cases in district court. TEX.CODE CRIM.PROC.ANN. art. 2.01 (Vernon Supp.1989). Moreover, only "the attorney representing the State"—that is, the district attorney and not a private citizen—may dismiss felony criminal prosecutions. *Id.* art. 32.02.

■ We question whether a private litigant should be able to waive a State's right to prosecute a crime when even separate governmental entities do not have that power. A criminal conviction by one governmental entity does not waive a different sovereign's right to prosecute the same conduct. *See Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (Georgia murder conviction does not bar Alabama from bringing capital murder charge based on same homicide); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (state-federal); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (federal-state); *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (Indian tribal conviction does not bar federal prosecution of same conduct); *cf. Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (because city and state are not separate sovereignties, both cannot prosecute same offense).

In *Wheeler,* a unanimous Supreme Court stated that "undesirable consequences" would result from imposing a double jeopardy bar to successive prosecutions by different sovereignties: "Prosecution by one

---

2. Williams' contempt proceeding is considered criminal (or punitive) and not civil (or coercive) because he was imprisoned as punishment for a completed act and not to coerce him to perform some act in the future. *See Ex parte Werblud,* 536 S.W.2d 542, 545–46 (Tex.1976).

3. We share the similar concerns voiced by Justice Ryan in dissent in *People v. Gray,* 69 Ill.2d 44, 12 Ill.Dec. 886, 892, 370 N.E.2d 797, 803 (1977) (Ryan, J., dissenting), which were quoted with approval in *Commonwealth v. Allen,* 506 Pa. 500, 486 A.2d 363, 369 (1984), *cert. denied,* 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985):

> The necessity of criminal contempt as a tool for deterring abuse of the judiciary demands that a judge not be required to consider the consequences of foreclosing subsequent criminal prosecutions. As the People note in their brief, the majority holding, in effect, gives the trial judge the power to decide whether a contumacious party will be charged with a criminal offense, thus usurping the function of the State's Attorney. It might also be noted that in most cases of a violation of a court order, the criminal contempt is really initiated or prosecuted by the aggrieved party; the contempt is not prosecuted in the name of the People and the State's Attorney is not even notified or aware of the proceedings.

The Illinois Supreme Court overruled *Gray* in *People v. Totten,* 118 Ill.2d 124, 113 Ill.Dec. 47, 514 N.E.2d 959 (1987).

sovereign for a relatively minor offense might bar prosecution by the other for a much graver one, thus effectively depriving the latter of the right to enforce its own laws." 435 U.S. at 318, 98 S.Ct. at 1083.

■ We believe that *Brown* and *Englutt* do not apply to the present case because the *State* has not yet prosecuted Williams for the shooting incident. As the Supreme Court has said in a different context, to hold otherwise "would deny the State its right to one full and fair opportunity to convict those who have violated its laws." *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984). *See also, Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978) ("prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial").

In addition, we decline to follow *Englutt* and *Brown* because they rest on a palpable misreading of *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), and because they fail to consider and apply settled double jeopardy principles. In *Menna* the defendant, who had been held in contempt of court for refusal to testify to a grand jury, was later indicted for the offense of refusing to testify before a grand jury. He pleaded guilty to the criminal offense, and then appealed his conviction on double jeopardy grounds. The state courts affirmed his conviction by refusing to consider his jeopardy contention on the sole ground that his guilty plea had waived it. The Supreme Court disagreed with the waiver ruling, reversed, and remanded with

instructions to consider Menna's double jeopardy claim, "a claim," said the Court, "on which we express no view." 423 U.S. at 62, 96 S.Ct. at 242. Although Justices Brennan and Marshall, concurring, would have sustained Menna's double jeopardy argument, seven members of the court did not. To say the least, under these circumstances, *Menna* certainly does not announce a general rule that a criminal prosecution bars all subsequent contempt proceedings arising from the same incident, as *Englutt* and *Brown* held.

The Court's opinion in *Menna* does state in a footnote that Menna's "double jeopardy claim is a strong one," suggesting that the contempt holding against him was "for the *same crime* as the one charged in the instant indictment." 423 U.S. at 62 n. 1, 96 S.Ct. at 242 n. 1 (emphasis added). Menna was indicted ·for refusal to answer questions before a grand jury, having been held in contempt for failure to testify before the grand jury, precisely the same offense. Nevertheless, seven members expressed no view on the double jeopardy contention.[4]

After diligent research we have not found a single reported decision from any state or federal court in this country, with the exceptions of *Englutt* and *Brown*, that has cited *Menna* for the proposition that a contempt ruling bars a subsequent criminal proceeding, or vice versa. We respectfully submit that *Englutt* and *Brown* mistakenly accepted the Brennan–Marshall view on this important double jeopardy issue, even though the remaining seven members of the *Menna* court considered it an open question and went out of their way to say so.[5]

4. The dissent is correct in saying the Supreme Court in *Menna* avoided the constitutional question. We simply do not understand how a case that *avoids* a constitutional question can be cited as *having decided* the very issue that was avoided.

On remand, the New York Court of Appeals, in a two-paragraph memorandum opinion that did not discuss the issues, concluded (with the State's concurrence) that Menna's jeopardy plea should be sustained. The court did not suggest in any way that as a matter of state or federal law contempt convictions bar all criminal prosecutions arising from the same incident. *People v. Menna*, 38 N.Y.2d 850, 382 N.Y.S.2d 56, 345 N.E.2d 599 (1976).

5. In *Ashe v. Swenson*, 397 U.S. 436, 449–60, 90 S.Ct. 1189, 1197–1202, 25 L.Ed.2d 469 (1970), *Brown v. Ohio*, 432 U.S. 161, 170, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977), and other cases, Justices Brennan and Marshall have urged a "same transaction" or "same episode" test instead of a "same evidence" test. But that view has never commanded a majority of the Court. *See Garrett v. United States*, 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985) ("We have steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause."); *Albernaz v. United States*, 450 U.S. 333, 344 n. 3, 101 S.Ct. 1137, 1145 n. 3, 67 L.Ed.2d 275 (1981) ("It is well settled that a single transaction can give rise to distinct of-

Most of the other jurisdictions that have considered this question have concluded that a contempt conviction does not bar a later criminal prosecution. *See generally Annot.*, 26 A.L.R.4th 950 (1983). Some courts have held that a criminal contempt ruling concerning conduct in open court does not bar a subsequent criminal prosecution concerning the same conduct. *See, e.g., United States v. Rollerson*, 449 F.2d 1000 (D.C.Cir.1971) (contempt sentence for assaulting prosecutor during trial did not bar later assault prosecution); *United States v. Mirra*, 220 F.Supp. 361 (S.D.N.Y. 1963) (contempt sentence for assaulting prosecutor during trial did not bar later assault prosecution); *State v. Warren*, 186 N.J.Super. 35, 451 A.2d 197 (1982) (summary contempt ruling for failure to testify before grand jury did not bar criminal charge of hindering prosecution); *Maples v. State*, 565 S.W.2d 202 (Tenn.1978) (contempt fine for false testimony did not bar prosecution for perjury).

Several courts have held that constructive contempt—based upon acts committed outside the court's presence that violated a court order—does not bar a later criminal prosecution. *See, e.g., People v. Matheson*, 671 P.2d 968 (Colo.App.1983) (contempt sentence for violating order that restrained husband from going near wife's residence did not bar criminal prosecution for sexual assault during same incident); *State v. Newell*, 532 So.2d 1114 (Fla.App.1988) (contempt conviction for damaging spouse's car did not bar criminal mischief prosecution based upon same act);[6] *People v. Totten*, 118 Ill.2d 124, 113 Ill.Dec. 47, 514 N.E.2d 959 (1987) (contempt for violating protective order did not bar prosecution for aggravated battery; overruling *People v. Gray*, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (1977)); *Commonwealth v. Gallarelli*, 372 Mass. 573, 362 N.E.2d 923 (1977) (contempt of court for jury tampering did not bar prosecution for conspiracy to influence juror); *People v. McCartney*,

141 Mich.App. 591, 367 N.W.2d 865 (1985) (contempt for violation of probate court orders did not bar prosecution of trustee for embezzlement); *State v. Kimbler*, 31 Ohio App.3d 147, 509 N.E.2d 99 (1986) (contempt for violating visitation order did not bar criminal prosecution for child stealing); *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984) (contempt for spouse abuse did not bar prosecution for simple assault, criminal trespass, and rape), *cert. denied*, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985); *State v. Sammons*, 656 S.W.2d 862 (Tenn.Crim.App.1982) (contempt for violating visitation order did not bar kidnapping prosecution).

A few jurisdictions have held that the double jeopardy clause bars the later criminal proceeding. *See, e.g., United States v. Haggerty*, 528 F.Supp. 1286, 1295–1300 (D.Colo.1981) (contempt conviction of air traffic controller for violating restraining order against strike barred subsequent prosecution for striking against United States in violation of federal law); *People v. Lombardo*, 50 Cal.App.3d 849, 123 Cal. Rptr. 755 (1975) (contempt conviction for refusal to testify before grand jury barred criminal prosecution for same offense); *State v. Hope*, 449 So.2d 633 (La.App.1984) (contempt of court for violation of child visitation order barred later kidnapping charge); *People v. Colombo*, 31 N.Y.2d 947, 341 N.Y.S.2d 97, 293 N.E.2d 247 (1972) (contempt conviction for refusal to testify before grand jury barred criminal prosecution for refusal to obey court order to testify, where both required identical proof). *See also State v. Thompson*, 294 Or. 528, 659 P.2d 383 (1983) (discussing double jeopardy clause but apparently basing decision on statute that forbids separate prosecutions for multiple offenses arising from same episode if appropriate prosecutor knew of the offenses when first case was commenced).

Our review of the double jeopardy principles established by the Supreme Court and

---

fenses under separate statutes without violating the Double Jeopardy Clause").

**6.** In *Newell* the Florida court reconsidered and decided to "recede" from its earlier decision in

*Yarbro v. State*, 402 So.2d 599, 26 A.L.R. 4th 945 (Fla.App.1981), which had held that a contempt conviction bars a later criminal prosecution.

the Court of Criminal Appeals convinces us that the better-reasoned cases are those that hold there is no double jeopardy bar.[7] Decisions such as *Garrett v. United States*, 471 U.S. 773, 778–79, 786, 105 S.Ct. 2407, 2411, 2415, 85 L.Ed.2d 764 (1985), *Ex parte Peterson*, 738 S.W.2d 688, 689–91 (Tex.Crim.App.1987), and *May v. State*, 726 S.W.2d 573, 574–76 (Tex.Crim.App.1987), set forth a two-step inquiry:

1. Initially the court must determine whether the legislature *intended* to create two separate offenses, both of which could be punished.

2. If it did, the court must next decide whether the second prosecution is barred by the double jeopardy clause.

■ On the question of legislative intent, it cannot be seriously argued that the Texas legislature meant for contempt proceedings to bar attempted murder indictments. Nothing in the wording or background of TEX.PENAL CODE ANN. § 19.03 (Vernon 1989) (capital murder) or TEX.GOV'T CODE ANN. § 21.002 (Vernon 1988) (contempt) suggests that it did. Pursuant to *Garrett*, 471 U.S. at 778–79, 105 S.Ct. at 2411, *May*, 726 S.W.2d at 574–76, and *Peterson*, 738 S.W.2d at 689–90, we apply the well-settled analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which has been reaffirmed repeatedly by the Supreme Court. The *Blockburger* test is a rule of statutory construction. *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 681, 74 L.Ed.2d 535 (1983). Under *Blockburger*, a court must determine whether each offense requires proof of a fact that the other does not. If so, they are not considered the "same offense" for double jeopardy purposes. The court focuses on the elements of the two offenses, not the evidence actually presented at trial. *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980). The *Blockburger* test "emphasizes the elements of the two crimes. 'If each requires proof of a fact

that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes....' " *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225–2226, 53 L.Ed.2d 187 (1977) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)).

In view of these principles, it is obvious that the contempt case does not bar the criminal prosecution. The present attempted capital murder indictment will require proof that Williams attempted to cause the death of both Buffingtons. TEX.PENAL CODE ANN. § 19.03(a)(6) (Vernon 1989). That element of the criminal case was not an element of the contempt proceeding which involved the causing of physical contact or bodily injury in violation of a court order. Conversely, the contempt case required proof that a written court order existed, *Ex parte Wilkins*, 665 S.W.2d 760 (Tex.1984), and that Williams had notice of it. *Ex parte Conway*, 419 S.W.2d 827, 828 (Tex.1967). The criminal case will not require such proof. Thus the *Blockburger* analysis, and a comparison of the two statutes involved, leads to but one conclusion: the Texas legislature did not consider contempt of court and attempted capital murder to be the "same offense" for double jeopardy purposes, and did not intend that a contempt adjudication would bar the murder case.

Nevertheless the constitution may prevent some prosecutions that a state would be willing to allow. As a general rule, the double jeopardy clause bars "successive prosecutions" for a lesser included offense when the defendant has already been convicted of the greater offense. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *May v. State*, 726 S.W.2d at 574–77. It also bars prosecution for the greater offense when he has previously been convicted of a lesser included offense. *Brown v. Ohio*, 432 U.S. at 168–

---

7. The State relies on *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870 (1906), and *Ex parte Looper*, 61 Tex.Crim. 129, 134 S.W. 345 (1910). *Allison* and *Looper* do support the State's position, but we prefer not to rest our decision on them because the law of double jeopardy has undergone such great change since they were decided.

69, 97 S.Ct. at 2226–27; *Ex parte Peterson,* 738 S.W.2d at 690–91. But contempt of court is clearly not a lesser included offense of attempted capital murder.[8] Under *Illinois v. Vitale,* 447 U.S. at 417–21, 100 S.Ct. at 2265–67, if each offense can be established without also proving the other—considering the elements of the offenses and not the actual proof—they are not the "same offense" within the meaning of the double jeopardy clause.[9] This case would present an entirely different question, for example, if the State had prosecuted Williams for simple assault and then pursued the present indictment.

The purposes underlying the double jeopardy clause prohibition against successive

prosecutions [10] simply are not implicated in this case because the State has not yet prosecuted Williams for anything. The clause manifests a "willingness to limit *the Government* to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (emphasis added). Here there is no effort by prosecutors to obtain more than one punishment, *see Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225, or to bring repeated prosecutions until they obtain a conviction. *See Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).[11] This

**8.** The Code of Criminal Procedure defines a lesser included offense as follows:

> An offense is a lesser included offense if:
> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM.PROC.ANN. art. 37.09 (Vernon 1981).

**9.** We agree with the dissent that the *Blockburger* test is not the sole standard for determining when two offenses are the "same" under the double jeopardy clause. But it does not follow, and the cases have not held, that a second prosecution is barred simply because it involves relitigation of factual issues resolved in the first case. A fair reading of *Brown v. Ohio,* 432 U.S. at 166–68 n. 6, 97 S.Ct. at 2225–26 n. 6, *Ex parte Peterson,* and *May v. State,* yields these two well-settled principles: First, the State may not prosecute a defendant for a lesser included offense after it has prosecuted him for the greater offense, and vice versa. Second, in certain unusual fact situations a second prosecution will be barred even though each offense requires different proof. *See, e.g., Ashe v. Swenson, supra,* note 5, (double jeopardy guarantee includes collateral estoppel principles); *Ex parte Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) (conviction for unlawful cohabitation, which occurred from October 15, 1885 until May 13, 1888, barred later prosecution for adultery committed on May 14, 1988; conviction of continuing greater crime bars prosecution for lesser one). *Nielson* expressly states the "familiar

learning" that "a conviction or an acquittal of a greater crime is a bar to a subsequent prosecution for a lesser one." 131 U.S. at 189, 9 S.Ct. at 676. Recently the court has characterized *Nielsen* as a greater offense-lesser included offense case. *Illinois v. Vitale,* 447 U.S. at 421, 100 S.Ct. at 2267; *Brown v. Ohio,* 432 U.S. at 168, 97 S.Ct. at 2226–27.

In light of these authorities, we cannot accept the dissent's argument that *May* and *Peterson* prevent the State from litigating the same conduct that was punished in the contempt case. The Court of Criminal Appeals in *Peterson* squarely rejected that view when it confirmed the rule set forth in *Vitale:* "If the State is able to prove [the second offense] without also proving [the first offense, for which the defendant has already been convicted], a successive prosecution would not be for the 'same offense' within the meaning of the Double Jeopardy Clause." 738 S.W.2d at 691. *Accord, Illinois v. Vitale,* 447 U.S. at 417–21, 100 S.Ct. at 2265–67. It bears repeating that the courts have not accepted the Brennan–Marshall "one episode-one offense" view. *See* note 5 *supra.*

**10.** This case involves the second double jeopardy protection (against "second prosecutions") and not the first and third protections (against retrial after acquittal and multiple punishments). *See* note 1, *supra.*

**11.** In *Green* the Court gave the following oft-quoted reason for the double jeopardy clause:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that *the State* with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

case does not involve "the principles of finality and prevention of prosecutorial overreaching.... [N]or has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial." *Ohio v. Johnson*, 467 U.S. 493, 501, 104 S.Ct. 2536, 2541–42, 81 L.Ed.2d 425 (1984). To permit the present indictment to proceed will not afford the prosecution "another opportunity to supply evidence which it failed to muster in the first proceeding." *United States v. DiFrancesco*, 449 U.S. 117, 128, 101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980), quoting *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). Here there have been no "repeated prosecutorial sallies [that] would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).

■ In summary, we hold that the legislature did not intend for contempt of court convictions to bar prosecutions for attempted murder involving the same incident. Nor does the constitution bar the present indictment. The lesser included-greater offense cases do not apply because contempt of court is not a lesser included offense of attempted murder. It is of no consequence that the contempt proceeding and the pending murder case arose from the same incident, because the "same episode" test has never been accepted as a matter of federal or Texas constitutional law.

For the reasons stated, we hold that the trial court correctly denied the request for a writ of habeas corpus and correctly refused to dismiss the indictment.

The judgment is affirmed.

CARR, Justice, concurring.

I join the majority opinion and agree that this contempt punishment received as a result of the violation of this civil injunction between these private litigants will not

355 U.S. at 187–88, 78 S.Ct. at 223–24 (emphasis added).

support a jeopardy plea to a criminal prosecution brought by the State under the facts of this case.

I do so with the added reasons that, in my view, the violation of this civil injunction between these private litigants is not an "offense" within the intended meaning of the double jeopardy clauses of the United States and Texas Constitutions and that the contempt punishment for violation of this civil injunction between these private litigants is not the result of any second prosecutions brought by the State.

In addition, I find *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) distinguishable from the present case because in the *Menna* case, it appears that both the contempt of court proceedings and the later prosecution proceedings [1] were *initiated* by the State unlike the facts of the present case.

CHAPA, Justice, dissenting (joined by BUTTS, Justice).

I respectfully dissent.

The only issue before this court is whether the trial court erred in denying the application for writ of habeas corpus because of a violation of the double jeopardy provisions of TEX. CONST. I, § 14 and U.S. CONST. amends. V and XIV.

On March 9, 1987, in cause number 87–02–000087–CV, entitled Tom Williams v. Robert E. Buffington, Dorothy Buffington, and Robbie Buffington, the court enjoined appellant among other things, from "causing or threatening to cause physical contact or bodily injury to the Defendants [Buffingtons]."

On June 18, 1987, appellant allegedly shot Robert Buffington, Sr. and Robert Buffington, Jr. with a shotgun.

On January 6, 1988, appellant was indicted for attempted capital murder by a grand jury on the following counts:

1. Both proceedings in *Menna* were a result of Menna's original refusal to answer questions before the grand jury.

## COUNT I

That THOMAS HIRAM WILLIAMS, on or about the 18TH day of JUNE, A.D. 1987 and before the presentment of this indictment, in said County and State did then and there intentionally and knowingly, with the specific intent to commit the offense of capital murder by murdering more than one person during the same criminal transaction, to-wit: ROBERT BUFFINGTON, SR. AND ROBERT BUFFINGTON, JR., do an act to-wit: shoot ROBERT BUFFINGTON, JR., with a deadly weapon, to-wit: a firearm, specifically, a shotgun, which act amounted to more than mere preparation that tended, but failed to effect the commission of such capital murder;

## COUNT II

That THOMAS HIRAM WILLIAMS on or about the 18TH day of JUNE, 1987 and before the presentment of this indictment, in said County and State did then and there intentionally and knowingly, with the specific intent to commit the offense of capital murder by murdering more than one person during the same criminal transaction, to-wit: ROBERT BUFFINGTON, SR. AND ROBERT BUFFINGTON, JR. do an act, to-wit: shoot Robert Buffington, Sr., with a deadly weapon, to-wit: a firearm, specifically, a shotgun, which act amounted to more than mere preparation that tended, but failed to effect the commission of such capital murder.

On January 25, 1988, appellant was found guilty of criminal contempt for violating the court's injunctive order dated March 9, 1987:

Tom Williams, Plaintiff/Respondent, violated subparagraph (a) on page 2 of the Order of the Court dated March 9, 1987 by causing physical contact and bodily injury to Defendants Robert E. Buffington and Robbie Buffington by shooting Robert E. Buffington and Robbie Buffington with a shotgun on June 18, 1987 on the Zuehl Road overpass on Interstate 10 in Guadalupe County, Texas.

As a result, appellant was punished in the same order as follows:

It is ADJUDGED that Plaintiff/Respondent, Tom Williams, is in contempt of this Court for each separate violation of the Order of this Court set forth above. It is, accordingly,

ORDERED that punishment for Plaintiff/Respondent Tom Williams' violation of paragraph (a) on page 2 of the Order of the Court dated March 9, 1987 is assessed at a fine of $500.00 and confinement in the County Jail of Guadalupe County, Texas for a period of thirty days; ...

On February 10, 1988, appellant filed his application for writ of habeas corpus contending that the conviction and incarceration for contempt barred further prosecution under the pending indictment because of the double jeopardy provisions of TEX. CONST. art I, § 14 and U.S. CONST. amends. V and XIV. Appellant's application for writ of habeas corpus was denied by the trial court on April 14, 1988 after appellant had served his 30 day punishment for criminal contempt. This appeal has been perfected.

The State does not challenge appellant's contention that appellant was convicted of criminal contempt when he was incarcerated for 30 days or that the indictment involves the same occurrence for which appellant has already been punished. Therefore, appellant's unchallenged allegations may be accepted as correct. TEX.R. APP.P. 74(f). The State relies exclusively on the antiquated cases of *Ex parte Looper*, 61 Tex.Crim. 129, 134 S.W. 345 (1919) and *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870 (1906). Appellant relies upon *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Ex parte Brown*, 574 S.W.2d 618 (Tex.App.—Waco 1978, no writ), and *Ex parte Englutt*, 619 S.W.2d 279 (Tex.App.—Texarkana 1981, no writ).

*Menna, supra,* involved a situation strikingly similar to the case before us. The petitioner had served 30 days confinement for contempt of court after refusing to testify before a grand jury in violation of

the trial court's order. He was later indicted for the same offense. After asserting unsuccessfully that the indictment should be dismissed because the prior contempt conviction barred further prosecution under double jeopardy principles, he plead guilty. The New York State courts failed to address the double jeopardy claim, contending that it had been waived because of the guilty plea. Following the bedrock rule of avoiding constitutional decisions whenever possible, the United States Supreme Court reversed and remanded the case to the state court with instruction to consider the double jeopardy claim holding that the double jeopardy claim was not waived by a guilty plea. However, the Supreme Court nevertheless made significant declarations regarding the issue before us:

> The State concedes that petitioner's double jeopardy claim is a strong one on the merits. In light of the flat 30–day sentence imposed, the earlier conviction was a criminal conviction. *People v. Colombo*, 31 N.Y.2d 947 [341 N.Y.S.2d 97] 293 N.E.2d 247 (1972), on remand from *Columbo v. New York*, 405 U.S. 9, 30 L.Ed.2d 762, 92 S.Ct. 756 (1972); and New York law supports the proposition that the earlier conviction was based, at least in part, on the failure to answer questions on November 7, 1968, and was thus for the same crime as the one charged in the instant indictment. *In re Capio v. Justices of the Supreme Court*, 41 App.Div.2d 235, 342 N.Y.S.2d 100 (1973) *aff'd*, 34 N.Y.2d 603, 310 N.E.2d 547 (1974); *People v. Matra*, 42 App. Div.2d 865, 346 N.Y.S.2d 872 (1973).

*Menna*, 423 U.S. at 62 n. 1, 96 S.Ct. at 242 n. 1.

In a concurring opinion, Mr. Justice Brennan held that the double jeopardy claim should be sustained without remand, citing *Ashe v. Swenson*, 397 U.S. 436, 453–54, 90 S.Ct. 1189, 1199–1200, 25 L.Ed.2d 469 (1970) (Brennan, J. concurring).

In support of their argument denying the double jeopardy claim, the majority here attributes considerable significance to the fact that seven justices of the United States Supreme Court did not join Mr. Justice Brennan in his concurring opinion.

We see more significance in the fact that the United States Supreme Court did not simply declare that the failure of New York to take up the double jeopardy matter as harmless error because double jeopardy did not apply. The Supreme Court must have necessarily determined that implications of the Double Jeopardy Clause raised a substantial federal question, else it would not have granted the petition for certiorari. It is likewise significant, that none of the justices issued their own opinions disagreeing with Mr. Justice Brennan. Further, they all agreed in the court's per curiam opinion which went out of its way to remind New York "that the petitioner's double jeopardy claim is a strong one on the merits," that "the earlier conviction was a criminal conviction," and "that the earlier conviction was based, at least in part, on the failure to answer questions on November 7, 1968, and was thus for the same crime as the one charged in the instant indictment." Thus, these instructions of the United States Supreme Court directed to New York indicate clearly an inclination in support of the double jeopardy claim.

*Menna, supra,* can very reasonably be read to reveal that the majority of the United States Supreme Court adhered to one of its cornerstone rules, which is enunciated by Mr. Justice Harlan and Mr. Justice Stewart in their dissenting opinion in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969):

> One of the bedrock rules that has governed, and should continue to govern, the adjudicative processes of this Court is that the decision of constitutional questions in the disposition of cases should be avoided whenever fairly possible.

Obviously, the Supreme Court of the United States avoided a constitutional decision by directing New York to take care of its own constitutional problem and by suggesting how to do it. Furthermore, the highest court of New York received the message clearly when, upon rehearing, they unanimously held:

The order of the Appellate Division should be reversed and the indictment dismissed.

The Supreme Court of the United States has held that this defendant's claim of double jeopardy survived his plea of guilty (*Menna v. State of New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 [1975]). On review of such claim on the merits we conclude, with the concurrence of the prosecutor, that the double jeopardy clause precludes the prosecution of defendant on the charge to which he pleaded guilty.

*People v. Menna*, 38 N.Y.2d 850, 382 N.Y. S.2d 56, 345 N.E.2d 599 (1976).[1]

In *Ex parte Brown, supra,* the Waco Court of Appeals unanimously discharged the relator from confinement based on a criminal contempt conviction following a criminal court conviction involving the same conduct for which he had already been punished by fine and confinement. *Citing Menna, supra,* Chief Justice McDonald delivered the opinion holding the contempt punishment violated the double jeopardy provisions:

Contempt actions are criminal in nature. And the procedure therein should conform as nearly as practicable to criminal procedure. *Ex parte Genecov*, 143 Tex. 476, 186 S.W.2d 225....

The Fifth Amendment prohibition against double jeopardy precludes relator's punishment by contempt proceeding for what he has already been punished for under the state laws in the criminal proceeding. [citations omitted]
*Id.* 574 S.W.2d at 620–21.

Furthermore, the Texarkana Court of Appeals, in a unanimous opinion authored by Chief Justice Cornelious, rejected *Allison, supra,* choosing an interpretation which falls more in line with modern double jeopardy principles:

In this era of enlightened constitutional interpretation and expanded constitutional protection, it is recognized that, while a purely coercive confinement for contempt will not constitute a criminal conviction for purposes of the double jeopardy prohibition, *Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. Morales*, 566 F.2d 402 (2d Cir.1977), a flat confinement as punishment for an act constituting contempt does constitute such a conviction, and cannot lawfully be imposed for the same act for which punishment has previously been imposed in a criminal prosecution. *See Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Ex parte Brown*, 574 S.W.2d 618 (Tex.Civ.App.—Waco 1978, no writ); Solender, *Family Law: Parent and Child*, 34 SW. L.J. 176 (1980).[1]

[1]Early cases had held to the contrary. *See Ex parte Winfree*, 153 Tex. 12, 263 S.W.2d 154 (1953); *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870 (1906).

\* \* \* \* \* \*

*Ex parte Englutt*, 619 S.W.2d at 282 (Tex. App.—Texarkana 1981, no writ).

1. The majority dismisses this action of the New York Court of Appeals as being insignificant to the issue in question. A double jeopardy plea cannot receive a more overwhelming endorsement than a per curiam unanimous declaration that "the double jeopardy clause precludes the prosecution of defendant on the charge to which he pleaded guilty." The New York Court's failure to discuss the issue further, in addition to the concurrence of the prosecution, shows that the court and the prosecution considered the court's action axiomatic. We fail to see how that court's action is insignificant, considering that the charge to which the defendant plead guilty, and which the New York Court found would preclude further prosecution, was a contempt charge as in the case before us.

Because in *Menna, supra,* the United States Supreme Court avoided the double jeopardy question directly, the majority justifies criticism of all those who would place any reliance on the *Menna* double jeopardy suggestions. Those touched by this criticism would necessarily include the author and those concurring with this dissent, the unanimous courts of *Ex parte Brown, supra,* and *Ex parte Englutt, supra,* and the unanimous New York Court of Appeals together with the New York prosecutors. Nevertheless, it is impossible to ignore the clear instructions of the Supreme Court to the New York court on remand as to the identical issue before us. These instructions were so obvious to the New York court on remand, that the court acted swiftly, unanimously, and without discussion to uphold the double jeopardy contention. If the court to which the instructions were directed understood and adhered to the Supreme Court message, We see no reason why other courts should not do the same.

The majority has chosen to disregard *Menna, supra,* and refuses to follow *Ex parte Brown, supra,* and *Ex parte Englutt, supra.*

The majority concedes that *Ex parte Englutt, supra,* and *Ex parte Brown, supra,* hold that double jeopardy principles bar a contempt conviction after the State has already prosecuted the respondent and obtained a conviction for the same conduct. However, the majority asserts that the reverse sequence of a criminal contempt conviction preceding a State criminal prosecution for the same conduct is somehow different. It describes the difference by simply asserting that such a situation would undesirably result in the possible undermining of the enforcement of criminal laws and contempt actions. While this concern is recognized, we cannot ignore the undesirable results created by the erosion of valuable double jeopardy constitutional protections.

The majority seems to view the application of the double jeopardy constitutional protections here as an impermissible waiver by private litigants of the State's privilege to punish for criminal violations. We view the application of these constitutional protections as they were originally intended, to protect an accused from multiple punishment for the same offense.

The majority opinion correctly asserts the right of two distinct sovereigns to prosecute for the same conduct, but fails to define the two sovereigns it alludes to. Certainly, the State District Judge that imposed the original punishment for criminal contempt derived his authority from the State of Texas. The State District Judge that would impose punishment in the event of a subsequent conviction for attempted capital murder would likewise derive his authority from the State of Texas. It must be conceded therefore, that all State District judges of this State serve one sovereign. Further, if the argument is directed at the instigators of the court action, it likewise cannot be seriously contended that private litigants and the State of Texas are two distinct sovereigns.

Certainly, in the case before us, it would have been preferable for the State to pursue the capital murder charge first.[2] However, this is not the issue before us. We are only called upon to determine whether the principles of double jeopardy would be violated by further prosecution for the same offense. If so, with or without reluctance, this constitutional protection must be upheld. Appellate judges must be immune to criticism for upholding the Constitution from those who would classify constitutional provisions as "technicalities." If we do not uphold the Constitution today, there may not be a Constitution to uphold tomorrow.

The majority finally simply declines to follow *Englutt, supra* and *Brown, supra,* because, allegedly, the two Texas Courts of Appeals "palpably" misread *Menna, supra.* If this is true, then eight Texas justices, including two chief justices from two Texas Courts of Appeals and all the justices of the highest court of New York must have "palpably" misread *Menna, supra.*

The majority also relies too narrowly on *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309, and its proclaimed rule:

> The applicable rule is that when the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

The majority asserts that because each of the two offenses involved here contains a different element, they cannot be the same offense for double jeopardy purposes. In so doing, they completely ignore subsequent United States Supreme Court decisions which have recognized that "the *Blockburger* test is not the only standard

---

**2.** The State contends that they were unaware of the contempt proceeding which took place in the same court that would eventually hear the attempted capital murder. Considering the size of the community of Seguin, Texas and the limited number of attempted capital murder cases that take place in such a small community, this contention is difficult to perceive.

for determining whether successive prosecutions impermissibly involve the same offense." *Brown v. Ohio,* 432 U.S. at 166, n. 6, 97 S.Ct. at 2226, n. 6. Even where the elements are sufficiently different to permit consecutive sentences, "successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Id.* at 166–67, n. 6, 97 S.Ct. at 2225–2226, n. 6; *citing Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *In re Nielson,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

The majority likewise ignores the treatment of the *Blockburger* rule by the Texas Court of Criminal Appeals:

> *Blockburger* being but a rule of statutory construction, the "other double jeopardy matters" alluded to in *McWilliams [Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Crim.App.1982) ]—"additional protection offered by *Ashe [Ashe v. Swenson,* 397 U.S. 436, 453–454, 90 S.Ct. 1189, [1199–1200] 25 L.Ed.2d 469 (1970) ] and *Nielson" [In re Nielson,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889) ]—may become very pertinent in a given case. *Illinois v. Vitale, supra,* 447 U.S. at 420, 100 S.Ct. at 2267; *see, e.g., Ex parte Rogers,* 632 S.W.2d 748 (Tex.Crim.App.1982); *Ex parte McWilliams, supra,* at 836 (Clinton, J., dissenting).

\* \* \* \* \* \*

[T]o say that [the Texas Court of Criminal Appeals] correctly adopted *Blockburger* as the sole test for determining jeopardy where an act or transaction violates two separate and distinct statutes is to ignore a whole body of jeopardy law to the contrary.

*May v. State,* 726 S.W.2d 573, 575, 577 (Tex.Crim.App.1987).

In *May, supra,* the Texas Court of Criminal Appeals held that the double jeopardy provisions apply to protect an accused from being tried for driving while intoxicated after being tried for involuntary manslaughter involving the same incident.

In *Ex parte Peterson,* 738 S.W.2d 688 (Tex.Crim.App.1987) the Texas Court of Criminal Appeals held that double jeopardy applies to protect an accused from being tried for involuntary manslaughter after pleading guilty to driving while intoxicated involving the same incident. Recognizing that under a strict application of *Blockburger,* the double jeopardy claim would have to be rejected, the court refused to follow *Blockburger,* and followed the "whole body of jeopardy law to the contrary." *May, supra* at 577.

In the case at bar, applicant pled guilty to and was convicted of DWI, after which he was charged with the offense of involuntary manslaughter. Each offense may require proof of a fact the other does not, to wit: involuntary manslaughter, recklessness of defendant causing death of an individual; DWI, operating a motor vehicle upon a public roadway while under the influence. *See May, supra.* In the abstract, then the two offenses are distinct and separate. We now turn our attention to the record at hand and compare the offenses as viewed in the context of this particular case.

\* \* \* \* \* \*

... Given the record before us, it is clear that the State intends to relitigate the issue of driving while intoxicated. This it cannot do. *May v. State, supra.* It is clear from the record that the State, at least under the present indictment, will find it necessary to prove that appellant was driving in an intoxicated condition or *to rely on conduct necessarily involving that conviction.* Because appellant has already been convicted *for conduct that is here shown to be a necessary element of the more serious crime for which he has been charged,* his claim of double jeopardy is substantial under *Vitale [Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ] and *Brown [Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ]. *See also* [sic] *Harris [v. State*

*of Oklahoma*] 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). (Emphasis added).

*Ex parte Peterson, supra* at 691.

Considering the record before us, it is clear that in order for the State to prove the attempted capital murder charge, it must relitigate the same conduct of appellant for which he has already been convicted and punished. This is not permissible under the present state of law.

Finally, the State before this Court misplaces its reliance exclusively on the antiquated cases of *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870, 871 (1906) and *Ex parte Looper*, 61 Tex.Crim. 129, 134 S.W. 345, 346 (1911). However, it is noteworthy that the majority opinion here justifiably finds no support from these cases.[3]

*Allison, supra*, although making gratuitous remarks about the double jeopardy question, dealth simply with the issue of whether a state statute permitting enjoining of the use of property for gambling was valid.

*Looper, supra*, which relied entirely on *Allison, supra*, did not involve a prior conviction with confinement as punishment, but merely involved a fine, which, is not described as either coercive or punitive in the opinion. In the case before us, it is undisputed that the original contempt conviction was a criminal conviction and that incarceration was part of the punishment.

The case before us clearly requires the application of *Menna, supra, Ex Parte Brown, supra* and *Ex parte Englutt, supra*. As in *Menna, supra*, appellant had already been punished for the same offense with a 30 day confinement as a result of a criminal contempt conviction. As suggested in *Menna, supra*, and as held in *Ex Parte Brown, supra*, the double jeopardy prohibitions preclude additional punishment for the same conduct in a second criminal proceeding under these circumstances. No valid reason exists to ignore sound double jeopardy law based on declared modern double jeopardy principles.[4] Further prosecution under the indictment before us would be in violation of the double jeopardy provisions of both the Texas and United States Constitutions.

The judgment should be reversed and the charge dismissed.

---

**3.** Although the dissent refuses to follow *Ex parte Englutt*, 619 S.W.2d 279, 282 (Tex.App.—Texarkana 1981, no writ) they recognize and embrace the new "era of enlightened constitutional interpretation and expanded constitutional protections," which led the court in *Englutt, supra* and apparently all the court here to place no reliance on *Ex parte Allison, supra*.

**4.** Without citing authority, the concurring majority opinion justifies multiple punishment where the initial punishment is administered at the instigation of private litigants. It argues that such punishment is not for an "offense" within the meaning of the double jeopardy clauses because it was not administered as a result of litigation injecting the name of the State. We are unable to find any authority which distinguishes between criminal contempt convictions depending on who instigates them. In *Menna, supra*, the court said, "In light of the flat 30 day sentence imposed, the earlier conviction was a criminal conviction."

Further, it must be conceded that the facts of the case before us and *Menna, supra*, are identical in that both defendants were made subject to court orders of State trial judges; both defen-

dants were charged with violating the court orders of the State trial judges; both defendants were convicted of criminal contempt for violating the State trial judges' orders; both defendants were incarcerated for 30 days as punishment for criminal contempt; both defendants were subsequently indicted for the same offense for which both had already been punished; and both defendants preserved the error properly with writs of habeas corpus, which were denied.

There can also be no disagreement that incarceration for 30 days is punishment no matter who instigates it, that the complainants in the contempt action were the same complainants in the attempted murder indictment, that only one sovereign was herein involved, and that the double jeopardy provisions were intended to protect the individual accused from multiple punishment for the same offense. This being the case, it appears inconsistent to hold that no such protection is available to an accused, if ingenious vehicles can be found to punish him several times for the same offense without injecting the name of the State directly.